## Case No. 16,245a.

### UNITED STATES v. SEAMAN.

[2 Hayw. & H. 151.] [1]

Circuit Court, District of Columbia. April 27, 1854.[2]

PUBLIC PRINTING — ACT OF AUG. 26, 1852 — CONTROL BY JOINT COMMITTEE—MANDAMUS.

1. By the terms of the act of congress of August 26, 1852 (10 Stat. 30), the superintendent of public printing is subject wholly to the control of the joint committee on printing, provided by said act.

2. This court has no jurisdiction to grant the relator relief by writ of mandamus, the respondent having a discretion to decide the matter in controversy, and this court cannot control him in the exercise of that discretion.

[This was a petition by Beverly Tucker for a writ of mandamus against A. G. Seaman, printer for the United States senate, to require him to deliver a certain document to the relator.]

The petition sets forth that the relator is the public printer for the senate of the United States, duly elected and qualified, and in the actual exercise of said office; that A. G. Seaman is the superintendent of the public printing, duly appointed and qualified, and in the actual exercise of the said last mentioned office. That the said superintendent hath received and now holds a certain portion of a certain public document to wit: the agricultural portion of the annual report of the commissioner of patents, and that the said document hath been ordered to be printed by both houses of congress, but was first ordered to be printed by the senate; and that such document in such case is by the terms of the act of congress, in such case made and provided, to be printed for both houses by said relator, as printer of the senate, which house of congress first ordered the same to be printed, and that it is the duty of the said superintendent, according to the terms of the said act, now to deliver the matter or copy of the said document to the said relator, as such printer, and that to him, the said relator, it belongs by the terms of the said act to receive and print the same, and to have and enjoy the profits and advantages resulting from such delivery and printing, and that the duty of so delivering the said matter or copy is a merely ministerial duty imposed by the said act. And that the said superintendent hath refused, and still refuses to deliver the same to the said relator, and threatens and intends to deliver the same to the printer of the house of representatives, whereby the said relator will be deprived of his rights and profits in the premises.

The motion to show cause, &c., being argued by counsel, and considered by the court, it is ordered that the motion be granted.

The following is the answer of the respondent: That he was duly appointed to the office

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton. Esq.]

[2] [Affirmed in 17 How. (58 U. S.) 225.]

of superintendent of the public printing, and that he is in the exercise of the duties of said office; that his duties are defined and prescribed by the act of congress, approved the 26th day of August, 1852; that the provisions of the act in regard to the delivery by this respondent of all matter ordered to be printed have been strictly complied with; that on the 3d day of January, 1854, the commissioner of patents communicated to the senate the mechanical report from his office, which was ordered to be printed and on the 1st of February the same document was communicated to the house of representatives and ordered to be printed, and according to the provisions of the 7th section of the act of congress of August 26, 1852, which provides that "when any document shall be ordered to be printed by both houses of congress the entire printing of such document shall be done by the printer of that house which first ordered the same." The entire printing of this document was required by this respondent to be executed by Beverly Tucker, the senate printer, and the copy was placed in his hands for this purpose. He further shows that on the 20th of March, 1854, the commissioner of patents communicated to the house and senate the agricultural report from his office, which was in each house on motion, ordered to be printed, the order being first made by the house of representatives; and in compliance with the law referred to, this respondent required the entire printing of this last mentioned document to be executed by A. O. P. Nickolson, the printer of the house. And he respectfully submits that the discharge of the duties of his said office of superintendent of the public printing is not subject to the control of this honorable court.

Mr. J. M. Carlisle commenced for the relator.

Mr. P. B. Key, U. S. Atty., in reply to Mr. Carlisle's argument, contended that the agricultural portion of the patent office report was a distinct document. If it was not a separate document it would have been printed by the first order of congress, and not have been the subject of a separate order. The letter notifying the making up of the agricultural portion from the commissioner of patents was received by the president of the senate on March 20th, and notified on the same day to the senate, two months after the vote upon the printing of the other portion of the patent office report on January 31st. They were, in consequence, two distinct and separate documents. He maintained that the 7th section of the act of 1852 was not in favor of the relator, and quoted the section to prove that the printing would go to the public printer, either of the house or senate, who first received the order. If the two portions of the patent office report had been sent together, Mr. Beverly Tucker would have been entitled to the printing of them both, but when they were, as they are now, separate documents, the printer of the house, if the order was first given, then he was entitled to it. It had been contended that the advantage of time was in favor of the house printer by half an hour, which was sufficient to entitle him to the preference, under the act of 1852, and was bound to distribute it accordingly.

In answer to the inquiry from the court, Mr. Key said the superintendent of public printing still held the document.

Mr. Key resumed, going over the argument that he had already adduced, and referred to the opinion expressed by the court, whether the duties of the superintendent of public printing were purely ministerial, which he maintained them to be by the 3d section of the act, which he then read.

Mr. Reverdy Johnson spoke at some length in favor of his client.

The cause having been heard upon the petition, answer and proof, touching the question, whether or not the different portions of the report of the commissioners of patents for the year 1854 constitute one and the same document.

BY THE COURT. That by the terms of the act of congress, approved the 26th day of August, 1852, entitled "An act to provide for executing the public printing and establishing the prices thereon, and for other purposes." The superintendent, as public printer, is subjected wholly to the control of the joint committee on printing, provided for by said act, in the matter complained of by the relator, and that by consequence this court has no jurisdiction to grant the relator relief by writ of mandamus. One of the judges, Judge Dunlop, being also of opinion, that if the court have erred in the above construction of the statute of the 26th of August, 1852, and the joint committee on printing have no control of the superintendent, then the superintendent of the public printing has a discretion to decide the matter in controversy in this case, and this court cannot control him in the exercise of that discretion on this last ground. Also the said judge thinks this court has no jurisdiction to grant to the relator the relief prayed by him; that if the subject was made the ground of an action at law, the court would then exercise its judgment, and would not consider itself bound by what Mr. Seaman did.

It is considered by the court and so ordered and adjudged, that the said writ of mandamus, as by the relator prayed for, be refused, and that the said petition be dismissed with costs.

[A writ of error was subsequently sued out from the supreme court, where the judgment of this court was affirmed, with costs. 17 How. (58 U. S.) 225.]